Van Brunt, P. J.
—This action was brought praying a judgment that the plaintiff is entitled to have and receive from the defendants, and each of them, §66 of the bonds of the Sovereign Mining Company, and 6,250 shares of said stock now held by the defendant, the American Loan and Trust Company.
The judgment in this action is assailed by the defendant, Whipple, upon the ground, among others, that the settlement made between the plaintiff and the defendant, Whipple, on or about the 1st of March, 1883, was obtained by fraud and duress upon the part of the plaintiff.
It is urged upon the part of the defendant, Whipple, that such settlement should be set aside and canceled as having been procured, upon the part of the plaintiff, in violation of his duty as attorney and confidential adviser, and that the plaintiff concealed material facts, and that it was obtained by oppression and duress. The fact that the plaintiff had occupied the relation of attorney towards the defendant, Whipple, long prior to the time of this settlement is established by the evidence. But that such relation continued up to the time of this alleged settlement has not been proved, but the contrary rather seems to be the fact. Down to October, 1882, the intercourse between the plaintiff and the defendant, Whipple, had been of an intimate character, and their relations and dealings with each other had been numerous and varied. But in October, 1882, in consequence, as it is alleged on the part of the defendant Whipple, of injustice towards him by the plaintiff, a rupture took place whereby these friendly relations were terminated and the parties were put in their dealings towards each other in the position of strangers.
As to the circumstances attending the settlement, in reference to the concealment of material facts, there is a- dispute in the evidence, the defendant, Whipple', swearing to one state of facts and the plaintiff testifying to another. The learned justice in the court below believed the statement of Bean entitled to the greatest credit, and we see no reason to interfere with that conclusion.
As to the charge of oppression and duress, the proof establishes beyond question that the defendant, Whipple, was in great monetary straits, and that the plaintiff had all his valuable resources as collateral to the indebtedness of Whipple to him, and if the necessities of the debtor compelling him to submit to a hard bargain, implies duress or oppression, then, perhaps, Mr. Whipple may have been the subject of oppression and duress. But nowhere have we been able to find any such definition of those terms. Mr. Whipple was at liberty to decline the settlement which was offered to him by Mr. Bean. If he thought it to his advantage, in consequence of his monetary distress, to accept the terms which were proposed he was at liberty to do so, and his accepting terms and conditions which he now thinks, in the light of subsequent events, that he might better have declined, does not seem to afford any foundation for the setting aside of the settlement upon the ground of duress and oppression. In fact, it does not appear until long after this alleged settlement that Mr. Whipple came to the conclusion that he had been the subject either of duress or oppression in reference to this matter.
From the time of the settlement of March 1, 1883, the plaintiff had a certificate for 1,777 shares of the stock of the Sovereign Gold Mining Company which had been left him by Whipple upon the settlement. The stock and bonds which formed the subject-matter of this litigation seem to have come into the possession of the defendant, the American Loan and Trust Company, in the following manner- The said Sovereign Gold Mining Company was" a corporation formed under the laws of New York, and the owner of certain mining property in Park county, Colorado, and a project was formed in the fall of 1884 by all the stockholders of said company other than the plaintiff, and by the owner of other mLing properties in the vicinity, to combine the' *999 properties under one management. For this purpose a new company, the defendant, the Sovereign Mining Company, was organized under the laws of Hew York for the purpose of taking title to the said property. The capital of the new company consisted of $10,000,000, divided into 100,000 shares of $100 each.
An agreement was entered into and signed by all the stockholders other than Mr. Bean; Mr. Whipple, however, signing for the total number of shares owned by himself and Mr. Bean. Under that agreement the stock and $4,000,000 of the bonds of the new company were to be distributed amongst the signers of the agreement in certain proportions. It was also provided that certain of the bonds and stock should be placed in escrow in the hands of the American Loan and Trust Company for a period of one year from the 1st of December, 1884, the trust company to issue receipts or certificates to the various parties owning the bonds and stock upon which, at the expiration of one year, the holders of the certificates could apply for and obtain the bonds and stuck represented thereby. The secretary of the company was to furnish a list to the American Loan and Trust Company of the various persons entitled to receive the certificates of the bonds and stock. The holders of the certificates of the stock of the Sovereign Gold Mining Company were to deliver up their certificates to the secretary of the Sovereign Gold Mining Company, and thereupon the secretary was to direct the American Loan and Trust Company to issue its certificates for the new bonds and stock to the owners of the stock in the old company. At the meeting of the directors of the Sovereign Mining Company, when the exchange of the certificates of stock in the old companies for the trust company certificates was to be carried out, most of the stockholders of the Sovereign Gold Mining Company produced their certificates and left them with the secretary of the new company. Mr. Whipple, stated that he either owned or would obtain the 350 shares outstanding and which had not been signed for under the agreement. The secretary received certificates for some shares of stock from Whipple, but there were about 3,000 shares of stock for which he should have produced certificates which he did not. He stated that ire owned such outstanding stock, and referred to the 1,777 shares which form the basis of this suit,’ which he stated that Mr. Bean had in Chicago, and that he would get it and return it as soon as he reached Chicago if the company would allow him to have the trust company certificates for the new bunds and stock, representing such stock. The secretary of the Sovereign Mining Company directed the trust company to issue the certificates to Whipple, which the trust company did; such certificates being payable to Whipple or his order, and, therefore, negotiable.
■ In connection with this scheme for the organization of the Sovereign Mining Company, a mortgage was made by the Sovereign Gold Mining Company, and such mortgage was foreclosed and the property sold according to the terms thereof, which was bought in by Mr. Thomas, who was the vice-president of the Sovereign Gold Mining Company. Subsequently both Mr. Thomas and the Sovereign Gold Mining Company conveyed the said property to the Sovereign Mining Company.
Under this state of facts, prior to the expiration of the year during which the bonds and stock of the new company were held in escrow by the trust company, the suit was begun, and an injunction was obtained forbidding the American Loan and Trust Company from delivering the 266 bonds and the 6,250 shares of stock held by the American Loan and Trust Company as representing the 1,777 shares of stock held by the plaintiff. The defendant Whipple defended the action upon the grounds hereinbefore stated, and upon the fnrllier ground that because of the foreclosure of the $75,000 mortgage the plaintiff was prevented from having any right or share in the stock or bonds in the new company.
The court upon the trial of the action directed the American Loan and Trust Company to deliver the stock and bonds to the plaintiff without the surrender of the certificates already delivered, as above stated, to Whipple. Mr. Whipple held certificates calling for 317 bonds, and of those bonds fifty-one are conceded to be his, the plaintiff being only entitled to 266 of the bonds.
It would appear, in view of the circumstance, that Mr. Whipple had certificates for other bonds than those which belonged to the plaintiff; that no decree or judgment directing the trust company to deliver any portion of these bonds *1000 ■without the surrender of the certificates should be ordered. In fact, it is doubtful whether, under the circumstances of the case, the trust" company having, in good faith, issued its certificates, by the terms of which it is to deliver the bonds only on the surrender of these certificates, it should be required to surrender such bonds upon any other condition, for the reason that Mr. Bean’s claim for these bonds results from his adoption of the action of Whipple in becoming a party to this scheme of reorganization, a part of which was the deposit of these bonds in the hands of the trust company, the issuance of the certificates, and the delivery of the bonds and stock at the expiration of the year upon the surrender of these certificates. Bean cannot adopt those portions of the acts of Whipple in reference to this transaction which tend in his favor, and relieve himself from the burdens which Whipple has placed upon the transaction.
But if this be not true, Whipple held certificates for more bonds than are required to satisfy the judgment of the plaintiff. He is entitled to transfer certificates for fifty-one of these bonds, and as those certificates have not been in any way traced how is it possible to determine whether in the transfer of certificates he has transferred those which represented the bonds and stock of the plaintiff or those which represented the bonds and stock owned by himself.
It may be said that this conclusion leaves the plaintiff in this action remediless because Mr. Whipple is not within the state and cannot be compelled by the decree of the courts in this state to surrender the certificates which represented the plaintiff’s bonds and stock. Mr. Whipple and Mr. Bean are both residents of Chicago; and if Mr. Bean has thought proper to pursue his remedies in the courts of a foreign jurisdiction, wherein he cannot enforce his judgment personally against Mr. Whipple, that affords no reason for putting the American Loan and Trust Company in the breach and compelling them to run the risk of claims which may hereafter be made upon these certificates which they have innocently issued to the defendant, Whipple.
The judgment, therefore, as to the defendant, Wliipple, should be affirmed, with costs, and the judgment as to the defendant, the American Loan and Trust Company, should be reversed, with costs.
Daniels and Brady, JJ., concur.